UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CINDY SLANE, | : | |
|     Plaintiff, | : | |
| v. | : | CASE No. 3:02CV00821 (AWT) |
| QUINNIPIAC UNIVERSITY SCHOOL OF LAW, | : | |
|     Defendant. | : | APRIL 9, 2007 |

## JOINT TRIAL MEMORANDUM

The parties, by their undersigned counsel, pursuant to Fed. R. Civ. P. 16, Rule 16 of the Local Civil Rules for the District of Connecticut, and the Standing Order Regarding Trial Memoranda in Civil Cases, as modified by the Trial Memorandum Order, dated February 7, 2007, hereby submit their Joint Trial Memorandum in the above-captioned matter:

1. **Trial Counsel**

   For Plaintiff:    Gregg D. Adler (ct05698)
   Mary E. Kelly (ct07419)
   Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
   557 Prospect Avenue
   Hartford, CT 06105-2922

   Mr. Adler will act as trial counsel

   For Defendant:    Lawrence Peikes, Esq. (ct07913)
   Meghan D. Burns, Esq. (ct26267)
   Wiggin and Dana LLP
   400 Atlantic Street
   P.O. Box 110325
   Stamford, CT 06911

   Mr. Peikes will act as trial counsel

2.  **Jurisdiction**

This Court has original jurisdiction (federal question) pursuant to 28 U.S.C. § 1331 over the claims alleging violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) and Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. §§ 2000e, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over her state law claims alleging violations of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq.*

3.  **Jury/Non-Jury**

This is a jury case.

4.  **Nature of the Case**

Plaintiff claims that (i) she has been discriminated against with respect to her compensation in violation of the EPA; (ii) she has been discriminated against because of her gender in violation of Title VII and the CFEPA; and (iii) QUSL retaliated against her after she filed a charge of employment discrimination with the Connecticut Commission on Human Rights and Opportunities, and thereafter this lawsuit, in violation of Title VII and the FEPA.

5.  **Stipulations of Fact and Law**

    *Stipulations of Fact*:

    A.  Following her graduation from law school in the spring of 1992, plaintiff worked for the Connecticut law firm of Day, Berry & Howard for approximately two years from September 1992 through August 1994.

    B.  Neil Cogan ("Cogan") served as Dean of the Quinnipiac University School of Law ("QUSL" or "Law School") from July 1, 1993 through June 30, 2000, and was on sabbatical from July 1, 2000 through June 30, 2001.

C.  In August 1994, QUSL, through Cogan, hired plaintiff as a Visiting Instructor of Law and Director of Field Placement Programs at an initial annual salary of $40,000.00.

D.  While he was Dean of QUSL, Cogan was required to submit his salary recommendations for new faculty members to the Quinnipiac University ("QU") Provost, John Bennett ("Bennett"), for approval. Cogan was also required to obtain Bennett's approval for any adjustments he recommended to the salaries of existing faculty members. Each year, QU allocated a raise pool to QUSL for allocation to the law school faculty, as recommended by the Dean of QUSL and subject to the Provost's approval.

E.  In 1996, Cogan recommended that QUSL's externship program be made permanent and that plaintiff be hired to a tenure position as director of the program.

F.  In the fall of 1996, QUSL's faculty voted to extend to plaintiff an offer of a 5-year contract as permanent Director of Field Placement Programs with the option to request that her position be converted to a tenure-track position. Plaintiff's responsibilities, however, did not change.

G.  Since the Fall semester of 1997, plaintiff's title has been Assistant Clinical Professor of Law and Director of Field Placement Programs.

H.  In 1997, QUSL, through Cogan, hired Book as an Assistant Clinical Professor of Law and Director of QUSL's Tax Clinic at an annual salary of $75,000.00. Book's annual salary was $78,750.00 for the 1998-1999 academic year, and $81,000.00 for the 1999-2000 academic year.

I.  As Director of QUSL's Tax Clinic, Book had ultimate responsibility for cases handled by the clinic and supervised the students enrolled in the clinic. Book also taught a seminar course for the students enrolled in the Tax Clinic designed to assist students in the

ability to represent individuals in tax controversies, which included a discussion of the substantive and procedural aspects of tax law.

  J. There are typically between 8 and 10 students enrolled in the Tax Clinic during any given semester.

  K. In or about March or April of 2000, Book announced he was leaving QUSL to accept a position with Villanova University School of Law as an Associate Professor of Law and Director of its Federal Tax Clinic.

  L. Plaintiff's salary history is as follows: 1994/1995 = $40,000.00; 1995/1996 = $45,000.00; 1996/1997 = $48,000.00; $1997/1998 = $54,000.00 (prorated to $10,000.00 due to a leave of absence); 1998/1999 = $58,000.00 (prorated to $46,400.00 due to her return from a leave of absence at a reduced course load); 1999/2000 = $59,750.00; 2000/2001 = $60,650.00; 2001/2002 = $62,590.00; 2002/2003 = $63,216.00; 2003/2004 = $65,150.00; 2004/2005 = $67,350.00; 2005/2006 = $69,800.00; 2006/2007 = $72,400.00.

***Stipulations of Law***:

To the extent the parties are able to reach agreement with respect to the applicable law, any such stipulations will be reflected in the jury instructions jointly submitted in accordance with the Trial Memorandum Order entered by the Court on February 7, 2007.

  **6.** **Plaintiff's Contentions**

  A. The plaintiff's position as Assistant Clinical Professor of Law and Director of Field Placement Programs was "substantially equal" to her male colleague Leslie Book's position as Assistant Clinical Professor of Law and Director of the Tax Clinic and yet the plaintiff's annual salary was more than $20,000 lower than that paid to Professor Book. This salary discrepancy was not based on legitimate factors other than sex.

4

B. The explanations provided by QUSL for the salary discrepancy between the plaintiff and Professor Book are pretextual, and the plaintiff's gender was a motivating factor for that salary differential.

C. The plaintiff's sex was and continues to be a factor in the determination of her salary and she is now and has been discriminated against in terms of her compensation because she is a woman.

D. Since 2000 the defendant has refused to adjust the plaintiff's salary to the level that it has acknowledged to be appropriate, and denied her an appropriate raise in 2002, because she engaged in protected activities by exercising her right (1) to complain about sex discrimination, (2) to file formal administrative charges alleging discrimination based on sex, and (3) to pursue this lawsuit.

7. **Defendant's Contentions**

Defendant denies each of plaintiff's claims and specifically alleges the following statutory defenses:

A. Neither QUSL's decision in 1994 to pay plaintiff a salary of $40,000.00 nor its decision in 1997 to pay Book a salary of $75,000.00 was based on gender. Both decisions, as well as QUSL's subsequent decisions regarding appropriate salary increases for plaintiff and Book, reflect circumstances unique to the positions being filled at the time, plaintiff's and Book's respective levels of experience and salary history, and the vastly different responsibilities associated with plaintiff's and Book's respective positions. Therefore, the pay discrepancy was based on factors other than sex so as to establish an affirmative defense under the EPA.

B. Plaintiff's Title VII claim alleging that QUSL engaged in gender-based discrimination in 1994 when initially setting her annual salary at $40,000.00 is barred by the applicable statute of limitations, as are any claims pertaining to the subsequent and/or ongoing effects of that salary decision.

**8. Legal Issues**

A. Whether plaintiff can establish that she and Book were paid differently for equal work on jobs requiring equal skill, effort, and responsibility.

B. If so, whether QUSL can establish that the pay differential between plaintiff and Book was based on a factor other than sex as determined in accordance with Second Circuit precedent.

C. Whether plaintiff can establish that she was paid a lower salary on account of her gender.

D. Whether plaintiff can establish that QUSL failed to adjust her salary since 2000 and/or awarded her a below-standard 1% salary increase for 2002-2003 in retaliation for engaging in protected activity.

E. Whether QUSL can establish that plaintiff's Title VII wage discrimination claim is barred in whole or in part by the operative statute of limitations.

**9. Voir Dire Questions**

*Plaintiff*:

See attached at Tab A.

*Defendant*:

See attached at Tab B.

10. **List of Witnesses**

*Plaintiff*:

| Name | Address | Anticipated Testimony |
|---|---|---|
| Cindy Slane | 85 Kellers Farm Road Easton, CT 06612 | The plaintiff will testify about her background and experience, facts and circumstances of her hiring by and her employment with QUSL, her duties and responsibilities, her job performance, the factual allegations set forth in the complaint, various communications with Dean Cogan, Dean King and other agents of the defendant, and her damages. |
| Carolyn Kaas | Quinnipiac University School of Law 275 Mount Carmel Avenue Hamden, CT 06518-1950 | Professor Kaas will testify about the efforts she and the plaintiff made in 2000 after learning of Les Books salary, various communications with Neil Cogan, David King and the plaintiff regarding the compensation issues, the duties and responsibilities of the plaintiff and others in the clinical faculty, the plaintiff's job performance, the plaintiff's damages, and other matters regarding the allegations in the complaint. |
| Neil Cogan | 1166 Rodeo Drive Los Angeles, CA | The former Dean will testify via deposition transcript regarding the facts and circumstances of the hiring and compensations levels of the plaintiff and Les Book, various communications with the plaintiff, Carolyn Kaas and David King in 2000 regarding the plaintiff's salary, the plaintiff's job performance, and other matters regarding the allegations in the complaint. |
| Leslie Book | 400 North Rose Lane Haverford, PA 19041 | Professor Book will testify via deposition transcript regarding his duties and responsibilities as Assistant Clinical Professor and Director of the Tax Clinic, his |

7

| | | |
|---|---|---|
| | | compensation for that work, the facts and circumstances of his hiring, communications with Neil Cogan and others, his background and experience, and his reasons for seeking the position at QUSL. |
| Edward Kavanagh | 16 Terrace Drive<br>Bristol, RI 02809 | Via deposition transcript: QU's former Vice President will testify about his communications and interactions with David King and the plaintiff regarding the compensation issues that had been raised by the plaintiff and Professor Kaas. |
| Toni Robinson | Cadar Point Farm<br>P.O. Box 6<br>North, VA 23128 | Professor Robinson will testify about the Tax Clinic, the individuals who have had responsibilities with respect to that clinic, the hiring of Leslie Book and any communications with Neil Cogan regarding that subject. |
| Mary Ferrari | Quinnipiac University School of Law<br>275 Mount Carmel Avenue<br>Hamden, CT 06518-1950 | Professor Ferrari will testify about the Tax Clinic, the individuals who have had responsibilities with respect to that clinic, the hiring of Leslie Book and any communications with Neil Cogan regarding that subject. |
| Alexander Scherr | 1395 Belmont Road<br>Athens, Georgia | Professor Scherr will testify as to the salary he was earning at his salary at Vermont Legal Aid at the time he was hired by Neil Cogan to teach at QUSL |
| Kristin Bloom | 124 Ritch Road | The plaintiff's daughter will testify |

8

|  | Greenwich, CT | about the plaintiff's damages |
|---|---|---|
| Susan Storey[1] | 30 Trinity Street<br>Hartford, CT | The Chief Public Defender for the State of Connecticut and a member (and former Chair) of the Permanent Commission on the Status of Women (PCSW) will testify about the plaintiff's work as Director of the QUSL Field Placement Programs, the plaintiff's damages, and other matters regarding the allegations of the complaint. |

*Defendant*:

| **Name** | **Address** | **Anticipated Testimony** |
|---|---|---|
| Brad Saxton[2] | Quinnipiac University School of Law<br>275 Mount Carmel Avenue<br>Hamden, CT 06518-1950 | Current structure of the Tax Clinic; salary review process and factors influencing salary adjustments; hiring practices and procedures including factors considered in setting initial salaries; plaintiff's current status, salary and other matters pertinent to her employment |
| David King | Quinnipiac University School of Law<br>275 Mount Carmel Avenue<br>Hamden, CT 06518-1950 | Communications with former Dean Cogan regarding plaintiff; plaintiff's performance while witness was Interim Dean of the Law School; plaintiff's salary history and the basis for salary decisions; communications and interactions with plaintiff and others regarding matters pertinent to her claims |
| Toni Robinson | Cadar Point Farm<br>P.O. Box 6<br>North, VA 23128 | Background on the Tax Clinic; duties of Tax Clinic Director; QUSL's efforts to hire Tax |

---

[1] Pending an offer of proof, defendant objects to Ms. Storey's testimony on grounds of relevance and undue prejudice.
[2] The plaintiff objects to the testimony of Dean Saxton in that he was not previously disclosed by the defendant as a potential witness in this matter. However, the defendant has agreed to produce Saxton for a deposition in advance of the trial and the plaintiff has therefore elected not to file a motion in limine regarding this witness.

| | | |
|---|---|---|
| | | Clinic Director resulting in hiring Leslie Book, and witness' involvement in that process |
| Mary Ferrari | Quinnipiac University School of Law<br>275 Mount Carmel Avenue<br>Hamden, CT 06518-1950 | Background on the Tax Clinic; duties of Tax Clinic Director; QUSL's efforts to hire Tax Clinic Director resulting in hiring Leslie Book, and witness' involvement in that process |
| Carolyn Kaas | Quinnipiac University School of Law<br>275 Mount Carmel Avenue<br>Hamden, CT 06518-1950 | Her communications and interactions with form Dean Cogan and Dean King regarding her own and plaintiff's claims; her communications and interactions with plaintiff regarding plaintiff's wage-related claims; her duties as the Director of Clinical Skills |
| Leslie Book | 400 North Rose Lane<br>Haverford, PA 19041 | Via deposition transcript: his educational and legal experience before being hired as Director of the Tax Clinic; the hiring process; his duties as Tax Clinic Director; his scholarly activities and compensation while employed as the Tax Clinic Director |
| Neil Cogan | 1166 Rodeo Drive<br>Los Angeles, CA | Via deposition transcript: his efforts to raise the salaries of non-tenure track instructors; his efforts to make the Externship program permanent; his decision to hire plaintiff and in setting her initial salary; his communications and interactions with plaintiff regarding her wage-related claims; the effort to hire a Director of the Tax Clinic; the hiring of Leslie Book as the Director of the Tax Clinic and |

10

| | | |
|---|---|---|
| | | the setting of his initial salary; the differences between plaintiff's job duties and Professor Book's job duties when he was Director of the Tax Clinic |
| Cindy Slane | Quinnipiac University School of Law 275 Mount Carmel Avenue Hamden, CT 06518-1950 | Her background, job duties, and claims; her communications and interactions with former Dean Cogan and Dean King regarding her claims |
| Edward Kavanagh | 16 Terrace Drive Bristol, RI 02809 | Via deposition transcript: his communications and interactions with Dean King regarding plaintiff's claims; his communications and interactions with plaintiff regarding her claims; his review of the salary structure of defendant's School of Law and his involvement in discussions pertaining to plaintiff's salary |

11.  **Exhibits**

*Plaintiff*:

See exhibit list attached at Tab C.

*Defendant*:

See exhibit list attached at Tab D.

12.  **Deposition Testimony**

*Plaintiff*:

Leslie Book – Transcript page nos.: 6-8, 10-15, 19-21, 26, 29.

Neil Cogan – Transcript page nos.: 17-20, 22-24, 34, 37-42, 61-62, 66-71, 78, 90, 100.

Edward Kavanagh – Transcript page nos.: 6-8, 15, 21, 25-27, 30-31, 36, 40, 48.

11

*Defendant*:

Leslie Book – Transcript page nos.: 4, 6, 8-9, 15-22, and 26-30.

Neil Cogan – Transcript page nos.: 7, 16-22, 24-30, 34-56, 76-80, 87-91, 93-97, 99-103, and 111-115.

Edward Kavanagh – Transcript page nos.: 5-7, 18-25

### 13. Requests for Jury Instructions

With the Court's approval, the parties have agreed to defer submission of proposed jury instructions pending a decision by the U.S. Supreme Court in the case of Ledbetter v. The Goodyear Tire & Rubber Co., No. 05-1074.

### 14. Anticipated Evidentiary Problems

Pursuant to Section 1 of the Trial Memorandum Order, motions *in limine* along with supporting memoranda of law are submitted herewith.

### 15. Proposed Findings and Conclusions

Not applicable.

### 16. Trial Time

The parties estimate that the trial in this action will require five full days.

### 17. Further Proceedings

Per the Order Re Defendant's Motion for Summary Judgment, entered by the Court on February 7, 2007, as amended by agreement of the parties with the approval of the Court, pending a decision by the U.S. Supreme Court in the case of Ledbetter v. The Goodyear Tire & Rubber Co., No. 05-1074, the parties shall submit a trial brief addressing what was described during oral argument as the "adverse employment action/statute of limitations issue."

**18.   Election for Trial by Magistrate**

The parties have not elected to have this matter tried before a Magistrate Judge.

Respectfully submitted,

| THE PLAINTIFF | THE DEFENDANT |
|---|---|
| CINDY SLANE | QUINNIPIAC UNIVERSITY SCHOOL OF LAW |
| By: *[signature]* | By: *[signature]* |
| Gregg D. Adler (ct05698) | Lawrence Peikes (ct07913) |
| gdadler@lapm.org | lpeikes@wiggin.com |
| Mary E. Kelly (ct07419) | Meghan D. Burns (ct26267) |
| mekelly@lapm.org | mburns@wiggin.com |
| Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C. | Wiggin and Dana LLP |
| 557 Prospect Avenue | 400 Atlantic Street |
| Hartford, CT 06105-2922 | P.O. Box 110325 |
| (860) 233-9821 | Stamford, CT 06911 |
| | (203) 363-7600 |
| | (203) 363-7676 (fax) |

\7377\201\640767.5