**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CINDY SLANE, | : | |
| Plaintiff, | : | |
| v. | : | CASE No. 3:02CV00821 (AWT) |
| QUINNIPIAC UNIVERSITY SCHOOL OF LAW, | : | |
| Defendant. | : | JUNE 4, 2007 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION *IN LIMINE***

Plaintiff's brief in opposition to defendant's motion *in limine* does far more to undermine, rather than advance, her cause. Thus, as detailed more fully below, plaintiff confirms her intention to offer (i) statements articulating QUSL's settlement position, made in the context of the CHRO's conciliation process, to establish liability, in direct contravention of Fed. R. Evid. 408, and (ii) "raw data" showing salary disparities between several hand-picked male and female faculty members unaccompanied by *any* statistical analysis whatsoever, much less the sort of comprehensive regression analysis required by the Second Circuit.

**A. The Alleged "Admission" Of Retaliatory Animus Is Barred By Rule 408**

In rather paradoxical fashion, plaintiff couples an overly wooden reading of the "prohibited uses" prong of Rule 408 with an exaggeratedly expansive construction of the case law applying the rule's "permitted uses" caveat; to no avail.

**1. The Settlement-Related Context of the Disputed Evidence**

Plaintiff's threshold point -- that the "admission" in question was made during the fact-finding portion of the CHRO conference, as opposed to the mandatory mediation -- senselessly elevates form over substance and conveniently overlooks the contents of the CHRO notice attached to defendant's opening brief, which specifically states that the fact-finding "process will be used in order to encourage the parties to settle the complaint pursuant to the Commission's predetermination conciliation process." This conciliatory objective is emphatically reiterated by the CHRO: "**Further be advised that this fact finding conference is in furtherance of the Commission's Mandatory Mediation Predetermination Conciliation Process**..."

Clearly, then, contrary to plaintiff's contention (Pltf's Mem. at pp. 12-14), the fact-finding conference and mandatory mediation are interrelated components of a broad conciliation initiative, not two separate, distinct and isolated procedures. Hence, as far as Rule 408 is concerned, it makes no difference whether the statement attributed by plaintiff to King was technically uttered in the fact-finding, rather than the mediation, segment of the conciliation process. See Steele v. Lincoln Financial Group, 2007 WL 1052495, at *3-4 (N.D. Ill. April 3, 2007)(e-mail exchange between EEOC investigator and employer's in-house counsel attendant to (but not during) mediation was inadmissible and therefore not discoverable).

**2. The Settlement-Related Nature of the Disputed Evidence**

Plaintiff's further contention, that King was doing something other than confirming QUSL's settlement position when he supposedly explained to the CHRO investigator that plaintiff's salary had not been adjusted upward because "the case didn't

settle" (Pltf's Mem. at p. 14), is divorced from reality and directly at odds with her own understanding of the circumstances. Thus, plaintiff's deposition testimony reflects that she knew full well her discussions with King, and subsequently defendant's counsel, regarding a possible bump in her salary were part and parcel of an effort to settle the wage discrimination allegations and the CHRO case. (Pltf's Dep. at pp. 156-66)(Copy attached at Tab A). As plaintiff acknowledged, King expressly said the purpose of the one and only meeting on the subject was "to discuss settlement." (Pltf's Dep. at pp. 157-58).[1]

Against this backdrop it becomes obvious King was confirming to the CHRO investigator that any pay increase was contingent on a resolution of plaintiff's claims and withdrawal of her CHRO complaint, a quintessential example of a statement excluded by Fed. R. Evid. 408. Stockman v. Oakcrest Dental Center, P.C., 480 F.3d 791, 800 (6th Cir. 2007)(district court erred by not excluding conciliatory letter offering to rehire plaintiff as "a *quid pro quo* for [him] to relinquish his cause of action").

**3. Inapplicability of the "Another Purpose" Exception**

Equally unconvincing is plaintiff's attempt to exploit Rule 408's "another purpose" loophole.

Specifically, plaintiff contends that Rule 408 is inapposite because "the statements of King and Zandy are not being offered to prove the defendant's liability for the gender discrimination claims or the value of such claims. Instead they are being offered to prove the defendant's motive in refusing to adjust the plaintiff's pay – a decision that the plaintiff contends was made in retaliation for her having pursued her sex

---

[1] King likewise understood that the objective of the discussion was to fully and finally resolve the salary issue. (See King Dep. at pp. 42-52)(Copy attached at Tab B).

discrimination claims." (Pltf's Mem. at p. 15). This argument, however, expediently ignores the indivisible bond linking the gender discrimination and retaliation claims, and cannot be squared with the Second Circuit's directive that, "Care should be taken that an indiscriminate and mechanistic application of this 'exception' to rule 408 does not result in undermining the rule's public policy objective." Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989).

Defendant does not contend, as plaintiff seems to believe, that the success of the retaliation claim is contingent on the success of the underlying EPA and Title VII claims. (Pltf's Mem. at p. 18). Rather, the unassailable line of reasoning advanced by defendant is that because the retaliation claim is firmly rooted in the EPA and Title VII claims under discussion at the CHRO conference, they are not independent of one another. See Trebor Sportswear, 865 F.2d at 510-11 (letter proposing settlement of parties' dispute properly excluded under Rule 408, even though offered to overcome statute of frauds defense and not to establish liability, because "the two questions were so closely intertwined, admission of the documents even initially for the purpose of meeting the statute of frauds requirement would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408").

Indeed, plaintiff alleged in her original CHRO complaint that her salary was artificially depressed due to gender-based discrimination. Re-casting that same alleged wrong as an act of retaliation does not alter the claim, only the legal theory. Thus, unlike the situation in Carney v. American University, 151 F.3d 1090 (D.C. Cir. 1998), King's alleged "admission" does not constitute "an entirely separate wrong," id. at 1095; it's the

same wrong -- denial of a salary adjustment -- just a different unlawful reason for allegedly committing that wrong.

The recent decision of the National Labor Relations Board ("NLRB") in St. George Warehouse, Inc., 349 N.L.R.B. No. 84, 2007 WL 1294608 (April 30, 2007) amply illustrates the point.[2] There, the Union introduced, over the Employer's Rule 408-based objection, evidence that in the course of a meeting arranged for the dual purpose of settling outstanding unfair labor practice ("ULP") charges and negotiating a collective bargaining agreement, the Employer offered to expand the bargaining unit as a *quid pro quo* for the Union's agreement to have an election among the employees in the expanded unit and withdraw the pending ULP charges. Similar to the position advocated by plaintiff in the matter *sub judice*, the Union contended, *inter alia*, that the statements "constitute[d] an independent surface bargaining allegation" so as to be admissible under Rule 408's "another purpose" exception. Id. at *8. The Board was not persuaded, concluding "that the alleged unlawful conduct ... would be barred by Rule 408 because that conduct 'was so closely intertwined with the unfair labor practices then under discussion that they cannot be separated therefrom.'" Id. (Citation omitted).

Likewise, here, and as distinguished from the situation in Carney and the other cases relied upon by plaintiff, the retaliation claim is not readily separable from the underlying wage discrimination claims that were the subject of the CHRO conciliation proceeding where the alleged "admission" of retaliatory animus was uttered. As such, the "another purpose" exception does not come into play and the evidence must be excluded pursuant to the dictates of Fed. R. Evid. 408.

---

[2] Unfair labor practice hearings before the NLRB are generally governed by the Federal Rules of Evidence. 29 U.S.C. § 160(b).

**B. "Raw Data" Reflecting Salary Variances Is Barred By Rules 401 And/Or 403**

Plaintiff clarifies that she has no intention of introducing a statistical analysis of faculty salaries, but instead merely intends to offer "raw data" of the salary paid to select male and female faculty members, ostensibly as "[e]vidence of a pattern or practice of adverse treatment of the protected class ..." (Pltf's Mem. at pp. 24-25). This clarification, however, proves too much and actually illustrates precisely why the evidence in question is either wholly irrelevant or subject to exclusion under Fed. R. Evid. 403 as unduly prejudicial, wasteful of time and needlessly confusing.

To begin with, contrary to plaintiff's characterization of our position, defendant is by no means "suggest[ing] that the Court should simply accept Dean King's affidavit denying that the salary differences were related to gender, and exclude the evidence" on that basis. (Pltf's Mem. at p. 25). Rather, the compelling point made by defendant is that admission of the "raw data" into evidence will necessarily trigger a responsive proffer in the form of evidence establishing a legitimate explanation for each of the disparities, as well as examples of comparably paid male and female faculty members, which may well engender a rebuttal, and so on. Inevitably, this exercise would culminate in a series of "mini-trials" directed to the exceedingly ancillary issue of whether other female faculty members, none of whom claim to be the victim of discrimination, are underpaid on account of gender. This sort of distraction cannot be justified, particularly given the limited evidentiary value, if any, of the "raw data." See, e.g., Heaton v. Weitz Co., Inc., 2006 WL 3392922, at *6 (N.D. Iowa Nov. 22, 2006)(excluding evidence pertaining to a prior retaliation case against employer because "it would likely confuse the jury, mislead

the jury and waste time" and give rise to "the danger of having a mini-trial on collateral matters").

It stands to reason, moreover, that if, as the Second Circuit squarely held in Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999), a statistical regression analysis of faculty salaries that "omit[s] the major variables" the employer claims are determinative of compensation is "of no probative weight" and properly excluded, id. at 449-50, then surely "raw" salary comparisons, unaccompanied by any regression analysis at all, must meet the same fate. By definition, such a "rudimentary analysis ... makes no attempt to ascertain the extent to which the apparent disparities may be attributable to factors other than gender" so as to be of limited utility and by no means "probative of discriminatory intent." Rathbun v. Autozone, Inc., 361 F.3d 62, 79-80 (1st Cir. 2004).

For this elemental reason, the Seventh Circuit, in Tagatz v. Marquette University, 861 F.2d 1040 (7th Cir. 1988), rebuffed a college professor's attempt to prove wage-based religious discrimination via a statistical showing that was functionally identical to plaintiff's proposed "raw data." The plaintiff in that case introduced a series of tables comparing salary raises for Catholic and non-Catholic faculty members; the tables "showed that, on average, the Catholic members of the faculty received significantly larger annual raises than the non-Catholic ones." Id. at 1043. Nevertheless, because the statistical analysis did not control for legitimate variables that affect faculty compensation, such as "rank, ... scholarly productivity and teaching evaluations" -- exactly the defect plaguing the "raw data" plaintiff would introduce into evidence -- it was discarded by the Court as "worthless." Id. at 1045.

Numerous cases of more recent vintage likewise stand for the proposition that naked statistic-like comparisons, along the lines of plaintiff's proffer, carry no evidentiary weight. See, e.g., Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1325 (11th Cir. 2006)("Statistics that merely describe these employees as minority or non-minority and disclose whether they were fired or disciplined less severely proves nothing without information about the particular circumstances involved in each situation."); Johal v. Little Lady Foods, Inc., 434 F.3d 943, 947 (7th Cir. 2006)(statistics reflecting the racial composition of management ranks was not probative in light of plaintiff's "failure to provide any information about the relative qualifications of the various upper managers who were retained, hired, or demoted."); Copeland v. CVS Pharmacy, Inc., 2006 WL 2699045, at *44 (N.D. Ga. Sept. 15, 2006)(statistical analysis was "of very limited value because the data on which those calculations were based were not meaningfully tailored"), *aff'd mem.*, 2007 WL 1482060 (11th Cir. May 22, 2007).

Particularly illuminating here is Equal Employment Opportunity Commission v. Brinker Int'l Payroll Co., L.P., 2007 WL 775584 (E.D. Wis. March 9, 2007), another case that is virtually on point. There, the EEOC alleged that the operator of a Chili's restaurant maintained a racially stratified workforce, with non-minorities holding "front of the house" positions (e.g., servers, bartenders, hosts/hostesses) whereas "back of the house" positions in the kitchen were reserved for Hispanics. In support of this theory, the EEOC sought to introduce a list of employees identified by ethnicity and position held. The district court concluded that such "statistical evidence is not probative of discrimination ..." because, like plaintiff's proposed proffer of "raw data," it is devoid of

context, and "[a]bsent proper context, the EEOC is relying solely upon correlation, and 'correlation is not causation.'" Id. at *9 (Citation omitted).[3]

Finally, plaintiff's suggestion that "any potential unfair prejudice or confusion can readily be resolved with an appropriate cautionary instruction" is self-serving, born of ignorance or both. (Pltf's Mem. at p. 26). "Prejudicial evidence can overwhelm the efficacy of palliative jury instructions. An instruction can lessen 'to some degree the prejudicial nature of inadmissible evidence; it is not, however, a sure-fire panacea for the prejudice resulting from the needless admission of such evidence.'" Stockman, 480 F.3d at 805 (Citations and alterations omitted). A cautionary instruction (whatever form that may take -- plaintiff doesn't say), interposed in the aftermath of what would inevitably be an extensive evidentiary proffer by both sides in regard to the salary disparities among various faculty members and the reasons for each such disparity, could only serve to confuse the jury further.

"Of course, the district court ha[s] a duty under Federal Rule of Evidence 403 not to allow the dispute over [the cause of other salary disparities] to obscure the legal issues in this case." Ammons-Lewis v. Metropolitan Water Reclamation District of Greater Chicago, __ F.3d __, 2007 WL 1544139, at *6 (7th Cir. May 30, 2007). Admission of the

---

[3] To be sure, the magnitude of any salary gap reflected in the "raw data," when viewed in a vacuum as plaintiff endeavors to do, does not magically render plaintiff's inadequate statistical survey admissible. This much is clear from the Tenth Circuit's recent decision in Carpenter v. Boeing Co., 456 F.3d 1183 (10th Cir. 2006), where the plaintiffs' expert's "regression analysis reflect[ing] a difference in the amount of overtime worked by men and women that was many standard deviations removed from equality," id. at 1201, was deemed insufficient to establish a *prima facie* case for disparate impact discrimination because the analysis failed to account for the overtime assignment mandates codified in the operative collective bargaining agreement. The Court explained that "the very large number of standard deviations does not mean the gross difference in the amount of overtime worked by men and women is itself large; it just means that the difference is very unlikely to be random. But since the CBA requirements not included in the ... model are not random, and may well impact men and women differently ..., the results of the .. [s]tudy are consistent with the CBA requirements being the cause of the disparity in overtime assignments." Id. at 1203.

evidence in question would surely contravene this duty because, as simply and colorfully put by the Seventh Circuit recently, "[s]tatistical evidence is only helpful when the plaintiff faithfully compares one apple to another without being clouded by thoughts of Apple Pie a la Mode or Apple iPods. [Plaintiff's] proposed statistical evidence lacks the context needed for a meaningful comparison and therefore must be rejected." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 492 (7th Cir. 2007).

* * * * * * * * *

For the foregoing reasons, and for the reasons stated in our opening brief, defendant's motion *in limine* should be granted and an Order entered precluding plaintiff from introducing into evidence (i) statements made by defendant's representatives at the CHRO fact-finding conference to the effect that plaintiff's salary had not been increased because "the case didn't settle" and (ii) raw data reflecting salary disparities between other male and female faculty members.

Respectfully submitted,

DEFENDANT,
QUINNIPIAC UNIVERSITY
SCHOOL OF LAW

By: ______________________

Lawrence Peikes (ct07913)
lpeikes@wiggin.com
Wiggin and Dana LLP
Its Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

**CERTIFICATE OF SERVICE**

This is to certify that on this 4th day of June, 2007, a copy of the foregoing has been was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

Gregg D. Adler, Esq.
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105

Lawrence Peikes

\7377\201\653648.1