EX. E

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CINDY SLANE,

    Plaintiff,

v.    CASE No. 3:02CV00821 (AWT)

QUINNIPIAC UNIVERSITY
SCHOOL OF LAW,

    Defendant.    JULY 26, 2007

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S REQUESTS FOR ADMISSION

Pursuant to Fed. R. Civ. P. 36, defendant Quinnipiac University School of Law ("defendant"), by and through its attorneys of record, hereby responds to Plaintiff's Requests for Admission:

### GENERAL RESPONSE

Defendant's responses refer to the faculty members of the law school only, unless otherwise noted.

### REQUESTS FOR ADMISSION

1. The defendant does not publish faculty salaries.

**RESPONSE:** Using the dictionary definition of publish, meaning "to make generally known: announce publicly," defendant admits this statement.

2. To the best of the defendant's knowledge, the salaries of the faculty are not published by any third party.

**RESPONSE:** Defendant is unable to admit or deny this statement. In the past the Society of American Law Teachers and the American Bar Association each conducted surveys of law school faculty salaries in which defendant participated. Likewise, defendant has participated, and continues to participate, in annual compensation surveys conducted by the American Association of University Professors ("AAUP"), the College & University

Professional Association for Human Resources, and the Integrated Post Secondary Data System. Defendant provided the average high, median, and low salary level for each faculty position, i.e., instructor, associate professor, full professor, etc. These third-parties provide reports to defendant and other participating universities that include the salary information provided by defendant. These reports are confidential and not available for general distribution. However, to the best of defendant's knowledge, the AAPU publishes its survey results annually in the Chronicle of Higher Education, but it does not report the information by discipline (i.e., philosophy, biology, law), only by faculty position.

3. To the best of the defendant's knowledge, at no time during the plaintiff's employment has any third party published the faculty salaries.

**RESPONSE:** Defendant is unable to admit or deny this statement. See explanation in response to Request No. 3.

4. The defendant does not discuss the specific salaries of faculty members with other faculty members.

**RESPONSE:** Deny. Dean Brad Saxton has discussed specific salaries of faculty members with Associate Dean David King, a member of the law school faculty. These discussions took place in the context of Dean Saxton making decisions regarding setting the salary of new faculty members. In addition, at the time of determining recommendations for annual salary increases for the faculty during the first two years of Dean Saxton's deanship, he reviewed with Dean King the increases, and thus, the specific salaries, for faculty members. Dean Saxon did so in an effort to ensure that his recommendations were based on the fullest possible information of faculty members' performance in teaching, research and service. Also, Deans Saxton and King have discussed plaintiff's salary in the context of the present litigation.

5. At no time prior to 2000, did the defendant disclose to the plaintiff the salary of any other faculty member.

**RESPONSE:** Defendant is unable to admit or deny this statement. Dean Saxton was not employed by Defendant prior to 2000. Dean King did not disclose any salary information to plaintiff. Defendant has sought a response to this statement from former Dean Neil Cogan, but he has not provided a response.

6. To the best of defendant's knowledge, it would not have been possible between 1994 and 2000 for a faculty member to learn the salaries of other faculty members from the University, absent litigation.

**RESPONSE:** Defendant is unable to admit or deny this statement. Faculty members would possibly have been able to learn the salaries of the faculty members of the undergraduate University from information contained in a collective bargaining agreement in effect at the time. It is possible that should an issue have arisen where it would have been appropriate to share with a faculty member the salary range for a particular faculty position, such information may have been disclosed. However, to the best of defendant's knowledge, the University would not, in ordinary circumstances, disclose the specific salary of any faculty member to other members of the faculty.

7. The general practice at the University between 1994 and 2000 was that faculty members kept their salaries private.

**RESPONSE:** Defendant is unable to admit or deny this statement. Defendant does not monitor or police conversations among faculty members, nor has defendant surveyed faculty members to ascertain their practices in regard to the sharing of salary information. Consequently, defendant has no knowledge of the actual practice of the faculty members of the law school.

8. The general practice at the University between 1994 and 2000 was that the faculty did not discuss their own salaries with each other.

**RESPONSE:** Defendant is unable to admit or deny this statement. See explanation in response to Request No. 7.

9. The culture at the University between 1994 and 2000 was that faculty members kept their salaries private.

**RESPONSE:** Defendant is unable to admit or deny this statement. See explanation in response to Request No. 7.

10. The culture at the University between 1994 and 2000 was that the faculty did not discuss salaries amongst themselves.

**RESPONSE:** Defendant is unable to admit or deny this statement. See explanation in response to Request No. 7.

11. Cindy Slane did not know the salary of Leslie Book until 2000.

**RESPONSE:** Defendant is unable to admit or deny what plaintiff knew or when she knew it.

12. Cindy Slane did not know the salaries of the defendant's male faculty members, other than Leslie Book, until after the litigation in this case had commenced.

**RESPONSE:** Defendant is unable to admit or deny what plaintiff knew or when she knew it.

13. Between 1994-2000, the defendant preferred that the faculty not share their salary information with other faculty members.

**RESPONSE:** Deny. Defendant never expressed such a preference.

14. At no time prior to 2000, did the defendant communicate to Cindy Slane that she was being paid less than Leslie Book.

**RESPONSE:** Defendant is unable to admit or deny this statement. To the best of defendant's knowledge, no such University-sanctioned or University-initiated communication of this nature was made to plaintiff.

15. At no time prior to 2000, did the defendant communicate to Cindy Slane that some of the women on the clinical faculty had been paid less than men who had previously or subsequently held the same position.

**RESPONSE:** Defendant is unable to admit or deny this statement. To the best of defendant's knowledge, no such University-sanctioned or University-initiated communication of this mature was made to plaintiff.

DEFENDANT,
QUINNIPIAC UNIVERSITY
SCHOOL OF LAW

By: /s/ Meghan D. Burns
Lawrence Peikes (ct07913)
lpeikes@wiggin.com
Meghan D. Burns (ct26267)
mburns@wiggin.com
Wiggin and Dana LLP
Its Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of July, 2007, a copy of the foregoing was sent via certified mail, return receipt requested, to:

Gregg D. Adler, Esq.
Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105

_____
Meghan D. Burns

\7377\201\660116.4